ORIGINAL

Approved: [signature]
DREW JOHNSON-SKINNER
Assistant United States Attorney

15 MAG 2263

Before: THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

U.S. DISTRICT COURT FILED JUN 30 2015 S.D. OF N.Y.

DOC # 1

---------------------------------- x

UNITED STATES OF AMERICA

- v. -

OSCAR LOPEZ,

Defendant.

---------------------------------- x

**SEALED COMPLAINT**

Violations of 18 U.S.C. §§ 371, 641, and 2

COUNTY OF OFFENSE: BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

KEVIN ADAMS, being duly sworn, deposes and says that he is a Special Agent with the United States Postal Service, Office of Inspector General ("USPS-OIG"), and charges as follows:

COUNT ONE
(Conspiracy to Steal Government Funds)

1. From at least in or about June 2010 up to and including at least in or about May 2012, in the Southern District of New York and elsewhere, OSCAR LOPEZ, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, theft of government funds, in violation of Title 18, United States Code, Section 641.

2. It was a part and object of the conspiracy that OSCAR LOPEZ, the defendant, and others known and unknown, would and did knowingly embezzle, steal, purloin, and convert to their own use and the use of another, and without authority, sell, convey, and dispose of records, vouchers, money, and things of value of the United States and a department and agency thereof, to wit, the United States Department of the Treasury, which exceeded $1,000, and did receive, conceal and retain the same with intent

to convert it to their use and gain, knowing it to have been embezzled, stolen, purloined and converted, in violation of Title 18, United States Code, Section 641.

Overt Act

3. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

a. In or about September 2011, LOPEZ obtained fraudulently-issued tax refund checks from his United States Postal Service delivery route in the Bronx, New York.

(Title 18, United States Code, Section 371.)

COUNT TWO

(Theft of Government Funds)

4. From at least in or about June 2010 up to and including at least in or about May 2012, in the Southern District of New York and elsewhere, OSCAR LOPEZ, the defendant, did knowingly embezzle, steal, purloin, and convert to his use and the use of another, and without authority, did sell, convey, and dispose of records, vouchers, money, and things of value of the United States and a department and agency thereof, to wit, the United States Department of the Treasury, which exceeded the sum of $1,000, and did receive, conceal, and retain the same with intent to convert it to his use and gain, knowing it to have been embezzled, stolen, purloined and converted, to wit, LOPEZ obtained fraudulently-issued tax refund checks to which he was not entitled and provided the checks to others in exchange for money.

(Title 18, United States Code, Sections 641 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5. I am currently employed as a Special Agent with the USPS-OIG, and have participated in the investigation of this case. This Complaint is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and individuals, including a cooperating witness. Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the

actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6. Based on my training and experience and my participation in this investigation and other similar investigations, I am aware of the following:

a. I have been involved in investigations involving the fraudulent use of stolen identities and Social Security numbers ("SSNs") to submit false and fraudulent federal tax returns.

b. Participants in these schemes file fraudulent federal tax returns seeking tax refunds. The fraudulent returns typically employ SSNs assigned to residents of Puerto Rico, among others.

c. The Social Security Administration issues SSNs to citizens of the Commonwealth of Puerto Rico. SSNs issued to individuals whose mailing addresses are in Puerto Rico begin with the numbers 580, 581, 582, 583, 584, 596, 597, 598, and 599 ("Puerto Rican SSNs"). Natural-born citizens of the Commonwealth of Puerto Rico are, upon birth, automatically granted United States citizenship.

d. Residents of Puerto Rico typically do not file tax returns with the IRS because such filing is not required as long as all of the Puerto Rico resident's income is derived from Puerto Rican sources.

e. The fraudulently-filed tax returns in these schemes typically claim that the filer resides in one of the fifty states of the United States, for example, in New York State.

f. By using Puerto Rican identities and SSNs, participants in these schemes, among other things, minimize the risks that a legitimate federal tax return already will have been filed by the person whose identity has been stolen.

g. Participants in these schemes obtain the federal tax refund checks in various ways, including by causing the United States Treasury to mail the checks or to wire electronic deposits in the amount of the checks into designated bank accounts.

7. During the course of this investigation, law enforcement agents have been working with a cooperating witness ("CW-1"). CW-1 has pleaded guilty to a federal crime and is cooperating with law enforcement in the hope of receiving a sentencing reduction. The information provided by CW-1 has been reliable and has been corroborated by independent evidence.

8. Additionally, during the course of this investigation, law enforcement agents have been working with another individual ("CC-1"). CC-1 faces potential federal criminal charges and is assisting law enforcement in the hope of receiving a sentencing reduction if charged. The information provided by CC-1 has been reliable and has been corroborated by independent evidence.

9. From reviewing records maintained by the United States Postal Service ("USPS"), I have learned the following:

a. OSCAR LOPEZ, the defendant, is currently employed as a USPS mail carrier in ZIP code 10460 in the Bronx, New York.

b. From at least in or about June 2010 up to at least in or about May 2012, LOPEZ typically delivered mail on a particular assigned route in ZIP code 10460 in the Bronx, New York, known as "Route Seven."

10. From speaking with CW-1 and CC-1, I have learned the following, in substance and in part:

a. From at least in or about June 2010 up to and including at least in or about May 2012, OSCAR LOPEZ, the defendant, provided CC-1 and CW-1 with tax refund checks issued by the United States Department of the Treasury in various individuals' names. The tax refund checks provided by LOPEZ to CC-1 and CW-1 were all unendorsed and all bore mailing addresses in the Bronx, New York.

b. LOPEZ told CW-1 that he obtained the tax refund checks from his USPS delivery route.

c. When CC-1 received tax refund checks from LOPEZ, he provided them to CW-1.

d. When CW-1 received checks from either CC-1 or directly from LOPEZ, CW-1 negotiated the checks, including by depositing them into bank accounts.

e. In return for the tax refund checks, CW-1, on some occasions, provided CC-1 with U.S. currency representing

a portion of the value of the checks. CC-1, in turn, provided LOPEZ with an amount of U.S. currency. On other occasions, in return for the tax refund checks, CW-1 provided directly to LOPEZ, or deposited into bank accounts controlled by LOPEZ, U.S. currency representing a portion of the value of the checks.

11. From reviewing records maintained by the Internal Revenue Service ("IRS"), the USPS, and Branch Banking & Trust Company ("BB&T"), among other sources, I have learned the following:

a. An individual income tax return was filed with the IRS for tax year 2010 in a certain individual's name ("Victim-1"). The tax return used Victim-1's Puerto Rican SSN and an address on Route Seven in ZIP code 10460 in the Bronx, New York. The employer listed on the Form W-2 that was filed in connection with Victim-1's tax return did not match IRS records.

b. As a result of the filing of the tax return, on or about September 9, 2011, the IRS issued a tax refund check in Victim-1's name and mailed it to the address listed on the tax return on Route Seven in ZIP code 10460 in the Bronx, New York. The tax refund check was in the amount of $7,306.

c. On or about September 19, 2011, the tax refund check in Victim-1's name was deposited into a BB&T account associated with CW-1.

12. From reviewing records maintained by the IRS, the USPS, and BB&T, among other sources, I have learned the following:

a. An individual income tax return was filed with the IRS for tax year 2010 in a certain individual's name ("Victim-2"). The tax return used Victim-2's Puerto Rican SSN and an address on Route Seven in ZIP code 10460 in the Bronx, New York. The employer listed on the Form W-2 that was filed in connection with Victim-2's tax return did not match IRS records.

b. As a result of the filing of the tax return, on or about September 9, 2011, the IRS issued a tax refund check in Victim-2's name and mailed it to the address listed on the tax return on Route Seven in ZIP code 10460 in the Bronx, New York. The tax refund check was in the amount of $8,755.

c. On or about September 17, 2011, the tax refund check in Victim-2's name was deposited into a BB&T account associated with CW-1.

13. From reviewing records maintained by the IRS, the USPS, and BB&T, among other sources, I have learned the following:

a. An individual income tax return was filed with the IRS for tax year 2010 in a certain individual's name ("Victim-3"). The tax return used Victim-3's Puerto Rican SSN and an address on Route Seven in ZIP code 10460 in the Bronx, New York. The employer listed on the Form W-2 that was filed in connection with Victim-3's tax return did not match IRS records.

b. As a result of the filing of the tax return, on or about September 9, 2011, the IRS issued a tax refund check in Victim-3's name and mailed it to the address listed on the tax return on Route Seven in ZIP code 10460 in the Bronx, New York. The tax refund check was in the amount of $8,190.

c. On or about September 23, 2011, the tax refund check in Victim-3's name was deposited into a BB&T bank account associated with CW-1.

14. From reviewing records maintained by Bank of America and from speaking with CW-1, I have learned the following:

a. On or about April 18, 2011, OSCAR LOPEZ, the defendant, opened a personal checking account in the name of "Oscar Lopez" at a Bank of America location in Brooklyn, New York (the "Checking Account").

b. On or about April 19, 2011, CW-1 made an out-of-state cash deposit into LOPEZ's Checking Account in the amount of $7,800.

c. On or about September 28, 2011, CW-1 caused a $8,000 cash deposit to be made into LOPEZ's Checking Account.

d. In total, from in or about April 19, 2011, to in or about November 2011, CW-1 caused approximately 18 deposits totaling over $108,000 to be made into LOPEZ's Checking Account.

15. From reviewing records maintained by the IRS, the USPS, BB&T, Wells Fargo Bank, Fifth Third Bank, and Peoples Bank, among other sources, I have learned the following:

a. From in or about June 2010 to in or about May 2012, the total value of tax refund checks bearing mailing addresses on Route Seven in ZIP code 10460 in the Bronx, New

York, and negotiated against or deposited into bank accounts associated with CW-1 was over $1 million.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of OSCAR LOPEZ, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

KEVIN ADAMS
Special Agent
United States Postal Service

Sworn to before me this
30th of June, 2015

THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York